IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKEY'S USA, INC., ) | 1:09cv0093 OWW DLB |
| ) | |
| ) | FINDINGS AND |
| ) | RECOMMENDATION |
| Plaintiff, ) | REGARDING PLAINTIFF'S |
| ) | MOTION FOR |
| ) | FOR DEFAULT JUDGMENT |
| vs. ) | |
| ) | (Document 19) |
| TUTTO'S PIZZA CORP., et.al., ) | |
| ) | |
| ) | |
| Defendants. ) | |

On July 20, 2009, Plaintiff Shakey's USA, Inc. ("Plaintiff" or "Shakey's") filed the instant motion for default judgment against Defendants Tutto's Pizza Corp., CM Restaurant Group, Inc., and Amira Hanna ("Defendants"). The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302. The matter was heard on September 18, 2009, before the Honorable Dennis L. Beck, United States Magistrate Judge. Shelly Gopaul appeared telephonically on behalf of Plaintiff. Defendants did not appear.

**BACKGROUND**

Shakey's filed this trade dress and trademark infringement action against Defendants Tutto's Pizza Corp, CM Restaurant Group, Inc., Amira Hanna and Joshua Cho on January 14, 2009. The action arises from Defendants alleged operation of a restaurant, Tutto's Pizza, using the Shakey's marks, trade secrets and trade dress. Shakey's alleges causes of action for (1) Federal Trade Dress

1

Infringement; (2) Federal Trademark Infringement; (3) Common Law Trademark Infringement and Unfair Competition; (4) Federal and State Trademark Dilution; (5) Misappropriation of Trade Secrets; (6) False Designation of Origin; and (7) Unfair Competition.  Plaintiff seeks declaratory and injunctive relief, statutory and actual damages, an accounting and disgorgement of profits, punitive or treble damages, attorneys' fees and costs.

According to the complaint, James Kim operated a Shakey's restaurant at 4984 E. King Canyon Road in Fresno, California pursuant to a franchise agreement.  James Kim is not a party to this action, but is a debtor in a pending bankruptcy case, *In re Kim*.

On or around August 1, 2006, Mr. Kim assigned the franchise agreement to Eugene and Nancy Yamamoto.  The Yamamotos are not parties to this action, but are debtors in a pending bankruptcy case, *In re Yamamoto*.  The Yamamotos operated the restaurant as a Shakey's under a franchise agreement.  On February 22, 2007, the Yamamotos' franchise agreement was terminated because of multiple breaches.  Shakey's sent cease and desist letters to Kim and the Yamamotos as it appeared that they continued using Shakey's trademarks and continued selling Shakey's products at the restaurant.

Shakey's filed a complaint in the Kim bankruptcy action.  Kim defaulted and a motion for default judgment is currently pending.  Shakey's also filed a complaint in the Yamamoto bankruptcy action.  The Yamamotos stipulated to a judgment, including an injunction.

Shakey's alleges that the restaurant is currently being operated by Defendants Tutto's Pizza Corp., CM Restaurant Group, Inc., Amira Hanna and Joshua Cho as Tutto's Pizza using the Shakey's marks, trade secrets and trade dress.  In October 2008, Shakey's sent a letter to Defendant Cho informing him and the current owner that they had retained several of Shakey's proprietary items, including menus, flyers and posters, and they also had continued to advertise and sell Shakey's exclusive Mojo™ potatoes.  Shakey's requested that Defendant Cho and the owner confirm that they were no longer using Shakey's marks or selling Shakey's products.  Shakey's did not receive a response to the letter.

Shakey's further alleges that Defendants continue to operate the restaurant using Shakey's marks, trade secrets and trade dress, including obtaining access to Shakey's new redesign package for its restaurants and repainting and redesigning the restaurant to conform to Shakey's new design.

According to the proof of service, Defendant Tutto's Pizza Corp. was served by substituted service on January 23, 2009. The summons, complaint and related documents were served on "ALEX KWION, MANAGER." Copies of the summons and complaint also were mailed to Tutto's Pizza Corp. at the restaurant address.

Defendant CM Restaurant Group, Inc., was served by personal service on January 23, 2009. Pursuant to the proof of service, the summons, complaint and related documents were served on Liz Medina, who is identified on the proof of service as a manager authorized to accept service.

According to additional proofs of service, Defendant Joshua Cho was personally served on January 23, 2009, and Defendant Amira Hanna also was personally served on January 23, 2009.

On March 12, 2009, pursuant to Plaintiff's request, the Clerk of the Court entered default as to Defendants Tutto's Pizza Corp., CM Restaurant Group, Inc., and Amira Hanna. CM Restaurant Group, Inc. is the owner of Tutto's Pizza Corp. As of August 2008, Amira Hanna was the President of CM Restaurant Group, Inc. Declaration of Glenn Plattner ("Plattner Dec.") ¶¶2-3 and Exhibit A.

On July 20, 2009, Shakey's filed the instant motion for default judgment as to Defendants Tutto's Pizza Corp., CM Restaurant Group, Inc., and Amira Hanna.[1] Defendants were served with the complaint on January 23, 2009.[2] They are not infants or incompetent persons, and are not in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. Plattner Dec. ¶8.

---

[1] Shakey's is not requesting default judgment against Defendant Joshua Cho. Shakey's explains that it has entered into a stipulated judgment with Defendant Cho. On July 20, 2009, Shakey's and Defendant Cho filed a stipulation and proposed order for entry of a permanent injunction and judgment. To date, judgment has not been entered against Defendant Cho.

[2] As to Defendant Tutto's Pizza Corp., the proof of service indicates that the summons and complaint were delivered to a "manager" and also mailed to Tutto's at the same address. Fed. R. Civ. P. 4(h)(1)(B) states that a domestic corporation may be served: "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant."

3

By the default judgment motion, Shakey's seeks the following:

1. Damages for Trademark and Trade Dress Infringement in the amount of $36,950.00;

2. Treble damages under the Lanham Act in the amount of $110,850.00;

3. Attorneys' fees in the amount of $21,771.00; and

4. Costs in the amount of $2,004.37.

## **ANALYSIS**

A. <u>Legal Standard</u>

Shakey's moves for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), which provides:

> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals–preserving any federal statutory right to a jury trial–when to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

"Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc., 722 F.2d 1319, 1323 (7th Cir. 1983); TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987). Thus, "[a]t the time of entry of default, the facts alleged by the plaintiff in the complaint are deemed admitted." 10 J. Moore, <u>Moore's Federal Practice</u> § 55.11 (3d ed. 2000).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

B.   Eitel Factors

    1.   Merits of Substantive Claims and Sufficiency of the Complaint

Although the complaint alleges multiple claims, Shakey's motion for default judgment addresses only its claims for trade dress infringement and trademark infringement. Accordingly, the Court limits its analysis to these claims.

First, Shakey's asserts that Defendants infringed its trade dress. To demonstrate trade dress infringement, Shakey's must establish that: (1) the dress qualifies for protection, which requires considering functionality, distinctiveness, and secondary meaning; and (2) that the dress has been infringed, which requires considering the likelihood of confusion. See Taco Cabana Intern., Inc. v. Two Pesos, Inc., 932 F.2d 1113, 1117-18 (5th Cir. 1991) (affirmed on review in Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992)); see also Switchmusic.com, Inc. v. U.S. Music Corp., 416 F.Supp.2d 812 (C.D.Cal. 2006) ("To recover for infringement of trade dress under the Lanham Act, a plaintiff must demonstrate that its trade dress is (1) non-functional; (2) serves a source-identifying role because it is inherently distinctive or has acquired secondary meaning; and (3) a likelihood of confusion exists."); 15 U.S.C. §1125.

Here, Shakey's alleges the facts necessary to demonstrate trade dress infringement. Shakey's alleges that it uses an inherently distinctive and non-functional trade dress. Complaint ¶34. Shakey's further alleges that Defendants' infringement of the trade dress has created a likelihood of customer confusion as to the relationship between Defendants' restaurant and Shakey's licensed restaurants. Complaint ¶37. Taking the factual allegations of the complaint as true, Shakey's has stated a claim for trade dress infringement.

Shakey's next asserts that Defendants infringed its trademarks. To prove trademark infringement, Shakey's must demonstrate: (1) it has a valid, protectable trademark; (2) it owns the trademark; (3) Defendants have used in commerce without authorization a copy, reproduction, counterfeit or colorable imitation of Shakey's marks in connection with the sale, distribution, or advertising of good and services; and (4) Defendants' use of the marks is likely to cause confusion. See Applied Info. Scis. Corp. v. eBay, Inc., 511 F.3d 966, 969 (9th Cir. 2007); 15 U.S.C. § 1114.

5

In this case, Shakey's alleges the facts necessary to establish trademark infringement by Defendants. Shakey's alleges that it owns valid and protectable registered trademarks. Complaint ¶¶ 11-13, 41. Registration of a mark on the principal register is prima facie evidence of the validity of the marks. Applied Info., 511 F.3d at 970. By declaration, Shakey's also demonstrates that it owns the marks. Declaration of Sonia Barajas Najera ("Najera Dec.") ¶¶4-14. Shakey's further alleges that the unauthorized use of its marks by Defendants creates confusion concerning the origin of the products and causes the public to patronize a restaurant using Shakey's marks. Complaint ¶43. Taking the factual allegations in the complaint as true, Shakey's has stated a claim for trademark infringement.

2. Remainder of Eitel Factors

As to prejudice to Plaintiff, if the default judgment motion is denied, Shakey's will be left without a remedy or means to prevent any possible future violations. As to a dispute over material facts, Defendants have not appeared to suggest a dispute. There also is no evidence that Defendants' failure to respond was the result of excusable neglect.

Based on the above, the Court find that the majority of Eitel factors favor default judgment.

C. Monetary Damages

Shakey's requests damages of $36,950.00 as a "reasonable royalty" for the Defendants' improper use of Shakey's trade marks and trade dress. The Lanham Act permits recovery of (1) Tutto's profits; (2) any damages suffered; and (3) the costs of the action. 15 U.S.C. § 1117(a). Shakey's offers no evidence as to Tutto's actual profits, but seeks the value of a franchise fee. To support their entitlement to monetary damages, Shakey's cites Taco Cabana, 932 F.2d at 1126, which provides that damages under the Lanham Act may include the economic benefits a plaintiff normally would have received by licensing. Shakey's explains that the request of $36,950.00 is the value of the franchise fee that Shakey's would have charged for use of its trademarks and trade dress, and is based on royalty rate of 5% multiplied by the estimated sales from Tutto's for the period April 2008

6

through March of 2009[3] of $739,003.00, using the historical sales during 2005 and 2006 and calculating a monthly average of those sales.  Najera Decl. ¶23.

      Courts have taken different approaches when awarding damages based on an approximation or estimation. For example, in Truong Giang Corp. v. Twinstar Tea Corp., 2007 WL 1545173, *14 (N.D.Cal. 2007), the court refused to grant damages in a trademark action where there was a complete lack of documentation providing a starting point for the plaintiff's calculations.  In Troung, the plaintiff sought damages based on profits derived from sales figures unsupported by any evidence.  Id.  In Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1408 (9th Cir. 1993), the Ninth Circuit refused to grant damages because the plaintiff failed to establish with reasonable certainty its own lost sales or defendant's profits from the infringing conduct.  Other courts, however, have taken a more relaxed standard of proof in default judgment cases such as this.  For instance, in Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd., 175 F.R.D. 658, 663 (S.D.Cal. 1997), the district court granted default judgment to a plaintiff trademark holder and noted that plaintiff might have a relaxed standard of proof for defendant's actual profits, where a defendant refused court summons or was otherwise entirely uncooperative.  The court granted plaintiff's $200,000 damage claim, which was derived through a series of estimations of Taiwanese exports of golf clubs and defendant's share of that market.  In a default judgment case involving a licensing fee, such as the franchising fee at issue here, at least one court awarded a lost licensing fee based on a royalty rate of 5% multiplied by average revenue of retail stores where the plaintiff offered no evidence of defendant's actual profits.  TELUS Corp. v. Telus Communications, Inc., 2007 WL 3169131, *2 (C.D.Cal. Feb. 9, 2007).  In the instant default judgment, the Court finds Plaintiff's damages request appropriate and recommends that Plaintiff be awarded a reasonable royalty.

      Shakey's also requests treble damages in the total amount of $110,850.00 resulting from Defendants willful infringement. The Lanham Act permits the court to treble actual damages.  15 U.S.C. § 1117(a) ("In assessing damages the court may enter judgment, according to the

---

[3] Plaintiff's counsel was informed on March 18, 2009, that the restaurant was no longer operating.

circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case."). Here, Shakey's believes that the conduct was willful based on (1) Defendants' failure to stop using Shakey's trade dress and trademarks after the October 2008 cease and desist letter; and (2) Defendants' redesigning and repainting of the restaurant to conform to Shakey's redesign package.

Shakey's submits the Declaration of Sonia Barajas Najera, the Vice President, Franchise Administration for Shakey's. In her declaration, Ms. Najera explains that Shakey's operates and licenses others to operate pizza parlor restaurants using the Shakey's name. Najera Dec. ¶5. Shakey's has distinctive and non-functional trade dress, including a distinctive restaurant designs, interior and exterior decorations, artwork, recipes and formulas. Shakey's recently updated its trade dress to include a distinctive yellow and orange color scheme. Shakey's licensees are required to update their Shakey's restaurants to Shakey's specifications in order to maintain the distinctive and non-functional nature of the trade dress. Najera Dec. ¶6.

Shakey's also owns the trademark, service mark and trade name "Shakey's," "Shakey's Pizza Parlor and Ye Public House," and other related marks.[4] Najera Dec. ¶7. Shakey's grants licenses to operate Shakey's pizza parlor with a unique and particular plan of operation ("Shakey's System"). Najera Dec. ¶13.

The restaurant at issue here was previously operated by James Kim under a franchise agreement. In or around August 2006, Mr. Kim assigned all of his rights in the franchise agreement to the Yamamotos. The Yamamotos' franchise agreement was terminated on February 22, 2007, due multiple breaches by the Yamamotos. Najera Dec. ¶¶15-16.

Shakey's believes that the Defendants in this action began operating the restaurant in or

---

[4] Shakey's has registered several principal marks, including SHAKEY'S, SHAKEY'S PIZZA PARLOR YE PUBLIC HOUSE, MO JO SHAKEY'S, MOJO and BUNCH OF LUNCH.

before March 2008, after termination of the Yamamotos' franchise agreement.  Defendants continued to use Shakey's trade marks, trade secret and trade dress.  As supporting evidence, Shakey's submits photos taken at the restaurant on March 20, 2008.  Najera Dec. ¶19 and Exhibit A.

On October 24, 2008, via messenger, Shakey's sent a letter to Defendants' restaurant stating that it appeared that they continued to operate a pizza parlor using the Shakey's Marks and the Shakey's System without permission from Shakey's.  Shakey's informed Defendants that they retained several of Shakey's proprietary items and continued to advertise and sell Shakey's exclusive Mojo™ potatoes.  Shakey's requested that Defendants confirm by November 3, 2008, that the Shakey's marks were no longer being used and Shakey's products were no longer being sold.  Shakey's did not receive a response to letter.  Najera Dec. ¶¶19-20 and Exhibit B.

Shakey's reports that Defendants also unlawfully gained access to Shakey's new redesign package.  According to Shakey's, Defendants repainted and redesigned the restaurant to conform to the new redesign, including Shakey's distinctive yellow and orange color scheme.  Najera Dec. ¶21. Shakey's submits photographs of the restaurant taken on October 24, 2008.  Exhibit C to Najera Dec.

Based on the declaration, the Court recommends that Plaintiff be awarded treble damages for wilful infringement.

D.   Attorneys' Fees and Costs

Next, Shakey's requests that this Court award attorneys' fees and costs in the total amount of $23,775.37.  Under the Lanham Act, attorneys' fees may be awarded to the prevailing party in exceptional cases.  *See* 15 U.S.C. § 1117(a).  A case is exceptional where the defendant is found to have acted maliciously, fraudulently, deliberately or willfully.  See Earthquake Sound Corp. v. Bumper Indus., 352 F.3d 1210, 1216 (9th Cir. 2003).

The amount of attorneys' fees requested is $21,771.00, and includes the time of one partner ($455 and $475 per hour) and one associate ($330 and $375 per hour).  Plattner Dec. ¶¶11-13. Shakey's counsel submitted copies of the billing records for this matter.  Exhibit B to Plattner Dec.

Shakey's also requests costs in the amount of $2,004.37, including: copy charges; filing fee; express package delivery; local delivery; Lexis research; Westlaw research; postage; filing/service

9

fees; miscellaneous fees; Pacer fee; and search fees. Plattner Dec. ¶15 and Exhibit B. The Lanham Act permits a plaintiff to recover the costs of the action. 15 U.S.C. § 1117(a); see also World Triathalon Corp. v. Dunbar, 539 F.Supp.2d 1270 (D.Haw. 2008) (court adopted special master's report that included finding that costs and out of pocket expenses such as postage and messenger service are recoverable under Lanham Act); Levi Strauss & Co. v. Fox Hollow Apparel Group, LLC, 2007 WL 1140648 (N.D.Cal. 2007) (finding amount for costs of $874.66 reasonable in light of the funds expended for court filings, service of process, and collecting evidence in trademark infringement action).

The Court recommends that Plaintiff be awarded its attorneys' fees and costs.

E.  Injunctive Relief

Shakey's also requests that the Court issue an injunction to halt Defendants' unauthorized use of Shakey's trade dress and to prevent the Defendants from further infringing on Shakey's trademarks. Shakey's acknowledges that the restaurant is currently closed, but requests the injunction to prevent Defendants from reopening it using Shakey's trademarks and trade dress. Under the Lanham Act, injunctive relief is available to prevent future trademark infringement and to enjoin use of trade dress. See 15 U.S.C. § 1116(a) (court has power to grant injunctions to prevent violation of any right of the registrant of a registered mark); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180-81 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.").

The Court recommends entry of a permanent injunction to prevent Defendants from any future infringement of Shakey's trademarks and to enjoin use of Shakey's trade dress.

**RECOMMENDATION**

For the reasons discussed above, the Court RECOMMENDS that:

1. Plaintiff's motion for default judgment in favor of Plaintiff and against Defendants Tutto's Pizza Corp., CM Restaurant Group, Inc., and Amira Hanna be GRANTED;

2. Plaintiff be AWARDED damages in the amount of $36,950.00 pursuant to 15 U.S.C.

§1117(a).

3. Plaintiff be AWARDED treble damages in the amount of $110,850.00 pursuant to 15 U.S.C. §1117(a).

4. Plaintiff be AWARDED attorneys' fees in the amount of $23,775.37 and costs in the amount of $21,771.00 pursuant to 15 U.S.C. § 1117(a).

5. Plaintiff be GRANTED the following permanent injunction pursuant to 15 U.S.C. § 1116(a):

    Defendants and their employees, agents, directors, officers, servants, attorneys, and those persons in active concert or participation with them are required to:

    (a) immediately discontinue the use of the Shakey's Marks, including but not limited to Shakey's service marks, trademarks and trade name, the sale of Mojo™ potatoes, and the use of any and all signs and printed goods bearing the said Shakey's Marks and/or any references whatever thereto;

    (b) immediately destroy all materials imprinted with the name "Shakey's" and/or "Shakey's Pizza Parlor and Ye Public House" and/or any other Shakey's marks;

    (c) immediately discontinue to operate or do business under any name or in any manner that might tend to give the general public the impression that Defendants are connected in any way with Shakey's or have any right to the use of the Shakey's System;

    (d) immediately discontinue to make, use or avail of any of the trade secrets of, or information imparted by Shakey's or disclose or reveal any such other information or any portion thereof to others;

    (e) immediately return to Shakey's the Operations Manual and all copies thereof, together with all other material containing trade secrets, operating instructions, or business practices, if any such information is currently in Defendants' possession, custody, or control;

    (f) refrain from occupying, constructing, equipping, ordering or assisting any person or persons in the occupation, construction, or equipping of any premises incorporating the distinctive features or equipment layout which Shakey's has originated and developed and which are identifying characteristics of premises operated by Shakey's franchisees;

    (g) immediately cease using the Restaurant, or otherwise, any Shakey's artwork and signs, interior and exterior color schemes distinctive to Shakey's, distinctive window glass and lamps, or other trade dress used by any licensed Shakey's pizza parlor restaurant;

11

>Defendants and their employees, agents, directors, officers, servants, attorneys, and those persons in active concert or participation with them are permanently enjoined and restrained from:
>
>(a) Doing anything to cause potential purchasers of Defendants' products or services to believe that Defendants' products or services originate with Shakey's or are authorized, endorsed, or affiliated with or sponsored by Shakey's, including but not limited to using the Shakey's Marks, trade secrets or trade dress.

This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 631 (b)(1)(B) and Rule 305 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty days (plus three days if served by mail) after being served with a copy, any party may serve on opposing counsel and file with the court written objections to such proposed findings and recommendations.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1).

IT IS SO ORDERED.

Dated:   **September 30, 2009**              /s/ **Dennis L. Beck**
                                      UNITED STATES MAGISTRATE JUDGE